BOIES SCHILLER FLEXNER LLP
ALISON L. ANDERSON (SBN 275334)
*alanderson@bsfllp.com*
725 S Figueroa St, 31st Floor
Los Angeles, CA 90017
Tel: (213) 995-5720/ Fax: (213) 629-9022

SIGRID S. MCCAWLEY*
*smccawley@bsfllp.com*
ALISHA MORICEAU*
*amoriceau@bsfllp.com*
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL  33301
Tel: (954) 356-0011/ Fax: (954) 356-0022

KENYA K. DAVIS*
*kdavis@bsfllp.com*
1401 New York Ave., NW
Washington, DC  20005
Tel: (202) 237-2727/ Fax: (202) 237-6131

ERICA N. SWEETING*
*esweeting@bsfllp.com*
55 Hudson Yards, 20th Floor
New York, NY  10001
Tel: (212) 446-2300/ Fax: (212) 446-2350
*Pro Hac Vice Application Forthcoming*

*Attorneys for Plaintiff*
*Lindsey Nikola*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDSEY NIKOLA | ) Case No. 2:23-cv-00811 |
| | ) |
| Plaintiff, | ) |
| | ) **COMPLAINT** |
| v. | ) |
| | ) |
| PETER FOLEY, GALE "TIGER" | ) |
| SHAW III, AND UNITED STATES SKI | ) |
| & SNOWBOARD, | ) |
| | ) |
| Defendants. | ) |

COMPLAINT

Plaintiff Lindsey Nikola for her Complaint against Defendants Peter Foley ("Foley"), Gale "Tiger" Shaw ("Shaw"), and United States Ski and Snowboard ("USSS") (together, "Defendants"), allege as follows:

## INTRODUCTION

1.      This case involves the molestation, exploitation, sexual abuse, and harassment of a former employee associated with the United States Snowboard Team ("the Team"), at the hands of trusted coach, Peter Foley, with the assistance, permission, and endorsement of United States Ski and Snowboard.

2.      Where there is a lack of effective reporting and investigatory mechanisms for individuals, there becomes a breeding ground for predators, such as Peter Foley, to take advantage of their positions and prey on others.

3.      In this case, Defendants put money and medals above the safety of the athletes and employees who were the pillars of their organization.

4.      Having made its Olympic debut at the 1998 Winter Olympic Games in Japan, the snowboarding community has remained relatively small, making it prone to power imbalances which only contribute to a false sense of security and obligatory silence.

5.      Foley is the premier and most acclaimed snowboarding coach in the United States and arguably the world.  Foley has held immense power in the snowboarding community since becoming the first coach of the Team after its inception in 1994.  He has been responsible for the careers of several medalists and advised hundreds of others.  To say he is the Kingmaker and Queenmaker of the sport would not be an overstatement.

6.      From his position of power and respect, Foley exploited his relationship with subordinates to coerce sexual acts through force, manipulation, emotional abuse, intimidation, and retaliation.  This unequal power dynamic created an environment

of coercion that was stronger and more effective than any physical weapon could ever be.

7.     Foley's predatory behavior was constant and well known to members and associates of the Team and the greater USSS.

8.     Foley's widespread sexual misconduct did not occur without the help of others.  Foley's abuse was reported to executives of the USSS on numerous occasions by multiple athletes who were coached by Foley, yet no action was taken.  Instead, over time, organizations and individuals banned together with Foley to facilitate and conceal his pattern of unwanted sexual abuse.  This union of organizations and individuals became part of the growing "Foley Sexual Abuse and Cover Up Enterprise."   The Foley Sexual Abuse and Cover Up Enterprise had many participants, grew over time in an effort to further cover up Foley's misconduct, and included Foley, the USSS, the USSS's executives, Gale "Tiger" Shaw, Alan Ashley, Abbi Nyberg, Jeffery Archibald, Allison Pitt, Lisa Kosglow, and Sophie Goldschmidt.  There may be other Members of the Foley Sexual Abuse and Cover Up Enterprise who are currently unknown but discoverable through the discovery process.

9.     Had the USSS taken the safety of their young athletes and employees seriously, Foley's behavior could have been prevented.  Instead, for nearly twenty years, coaches and executives at USSS enabled Foley's behavior, refused to act, and helped cover up Foley's behavior, allowing him to continue his pattern of abuse.

10.     Several athletes and employees were not allowed to pursue economic opportunities in the snowboarding industry due to Foley's cherry picking, which was directly tied to a quid pro quo for his sexual abuse and harassment.  There were personnel who suffered from Foley's abuse and the aftershocks and trauma caused them to forego economic opportunities they would have pursued but for the abuse they suffered at the hands of Foley.

11.     As alleged further herein, Foley abused his position of power in the snowboarding community to garner loyalty and trust while instilling fear and intimidation.  Foley did so all while USSS shielded him, disregarded allegations, and failed to protect the female employees of the organization.

12.     Due to Defendants' conduct, Lindsey and countless other victims have been immeasurably and permanently harmed.

## PARTIES

13.     Lindsey Nikola is an individual who resides and is domiciled in Utah.

14.     Defendant Peter Foley is an individual who resides and is domiciled in Oregon.

15.     Defendant Gale "Tiger" Shaw III is an individual who resides and is domiciled in Utah.

16.     Defendant United States Ski & Snowboard is the national governing body for Olympic skiing and snowboarding, with its principal place of business and headquarters in Park City, Utah.

## JURISDICTION, VENUE, AND CALIFORNIA'S SEXUAL ABUSE AND COVER-UP ACCOUNTABILITY ACT

17.     This Court has federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367 for the state law claims alleged.

18.     This Court has personal jurisdiction over all Defendants because they have purposefully availed themselves of the privilege of doing business in California and this lawsuit arises out of and relates to their contacts with California.

19.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)–(c) because the USSS conducts substantial business throughout this district, including, but not limited to sponsoring training camps, overseeing local ski and snowboard organizations, and evaluating athletes; events giving rise to claims herein occurred in

this district; and at least one Defendant is a corporation subject to the personal jurisdiction of this District.

20. This action is timely under the federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.*, and California's Sexual Abuse and Cover Up Accountability Act. California's Sexual Abuse and Cover Up Accountability Act (AB-2777) amended California Civil Procedure Section 340.16, extending the statute of limitations and opening up revival windows for adult survivors of sexual assault and related claims.

## **FACTUAL BACKGROUND**

21. The USSS was founded in 1905 and is the national governing body ("NGB") for competitive skiing and snowboarding. The USSS describes its mission as "to lead, encourage and support athletes in achieving excellence by empowering national teams, clubs, coaches, parents, officials, volunteers and fans."

22. In 1994, the USSS named Defendant Foley the first head coach of the United States Snowboard Team. Foley served as head coach from 1994 through March 2022, when these claims herein came to the surface.

23. At Foley's direction, female and male athletes and employees were routinely forced to share rooms at hotels and even beds (2–4 individuals per bed) with Foley and with each other while traveling to training camps and USSS-sponsored competitions, which normalized inappropriate conduct and gave easy access for Foley to abuse athletes and employees. At times, Foley, other male coaches, and male staff were sharing beds with multiple teenage girls. Rosey Fletcher, a former Team athlete and three-time Olympic snowboarder, for example, describes attending a training camp at the age of 19, where she shared a bed with her coach, Foley, and another young female athlete. This was all while athletes as young as 14 traveled and trained with the Team.

24.     Foley's power within the USSS organization extended beyond its athletes.  As the first and only head coach of the Team since the organization's inception, Foley wielded power over the operations side of the organization, as well. For example, it was well known that Foley decided which members of the communications and event teams could attend competitions and gain special access to press areas at those competitions.

25.     During his time as head coach, Foley destroyed the careers of multiple women and girls on the Team or associated with the Team by sexually assaulting, mentally abusing, and exploiting them and retaliating against those who refused to give in to his perverted desires.

26.     Foley's sexual abuse involved, among other things, sexual contact, forceful groping and fondling, and sexual comments—all of which were unconsented and unwanted.

27.     Plaintiff Lindsey Nikola was an employee of the USSS communications team in the marketing department, managing press and public relations, and engaging in communications coverage.

28.     Foley used his coaching position and authority within the USSS to sexually abuse, manipulate, batter, and control subordinate athletes and employees alike.  This included Lindsey.

29.     Foley coerced young female athletes and employees of USSS, including Lindsey, to take photos while they were nude or partially nude for Foley's sexual gratification.

30.     Male athletes would regularly get intoxicated after races and try to kiss female athletes and employees without their consent.  Lindsey recalls, for example, walking an intoxicated athlete home one night from an event, when a male athlete forcibly tried to kiss her.

31.     This toxic culture which led to the harassment, molestation, exploitation, and assaults of Lindsey and many others bled across the organization for an extensive period and was obvious to everyone who participated on, was associated with, or oversaw the Team.  The message was clear: play along to pursue your career or refuse to play along and lose your shot to pursue your future in a sport and field you love.  Thus, even after victims were assaulted they did not reveal that abuse to anyone for fear of being ostracized by their peers and, most of all, Foley.

32.     From the time of its inception until 2018, all of the coaches and staff, with the exception of one or two physical therapists, were exclusively male.  This gender bias was also reflected in the leadership of the organization.

33.     The USSS knew of Foley's sexual conduct, abuse of power, and controlling behavior; yet, the USSS empowered him to be the gatekeeper for which employees were selected to attend and participate in competitions and gain special access to press areas at those competitions, including the Olympics.

34.     If employees failed to comply with Foley's sexual advances and demands or complained about the sexually charged and harassing environment, they would be punished by not being able to attend or participate in competitions, including the Olympics.

35.     At no time during the periods of time alleged did the USSS have in place a reasonable system or procedure to investigate, supervise, and monitor the Team's coaches or staff, including Foley, to prevent sexual and verbal abuse, pre-sexual grooming, sexual harassment, or the molestation of children and young adults, nor did they implement a system or procedure to oversee or monitor conduct toward athletes, employees, and others in their care.

36.     When Lindsey or others reported Foley's abuse, they were ignored, intimidated, or provided with misinformation.  Moreover, the allegations of Lindsey and others and any attempts at investigations were ultimately intercepted by the Foley

Sexual Abuse and Cover Up Enterprise, which included the very members of the USSS entrusted with protecting their welfare and responsible for reporting said abuse.

37.    Meanwhile, Foley continued to maintain control over subordinates and received praise and protection.

38.    Foley's sexual abuse and the misconduct of other Defendants came to the public's attention in February 2022, during the Beijing Olympics, when former professional snowboard athlete Callan Chythlook-Sifsof bravely spoke out in an Instagram post.

39.    After Callan's post, Plaintiff Lindsey revealed that she had suffered sexual abuse against her at the hands of Foley.

40.    Foley was "temporarily suspended" during the Olympics following the post.  Despite the suspension, video footage showed Foley in a restricted area at the finish line of the Women's Snowboard Cross event.

41.    Foley was ultimately disciplined for "favoritism" but his exploitation and abuse as head coach went well beyond that.

42.    Additionally, after the Olympics' temporary suspension expired, there was no suspension in place, which permitted Foley to attend a trip to Austria for a post-Olympics competition in early March of 2022.  This allowed Foley intimate access to athletes and other employees to intimidate them into supporting him during the investigation.

43.    To this day, Lindsey continues to suffer depression, anxiety, and fear stemming from Foley's abuse.  She has also suffered from the humiliation, guilt, shame, and disgust of the sexual abuse and harassment she faced as a result of Foley's abuse of power. Lindsey has not worked in Olympic-level sports since leaving the USSS communications team as a result of the severe anxiety she experienced when encountering Foley and the USSS.

**I.** **Foley and the Foley Sexual Abuse and Cover Up Enterprise were designed to Manipulate, Sexually Abuse, and Control Employees.**

**Lindsey Nikola and the Foley Sexual Abuse and Cover Up Enterprise.**

44.     Lindsey was an employee of the USSS communications team in the marketing department.  In her role, she traveled to domestic competitions with the Team to manage press and public relations, write articles, and assist with the general needs of the Team.  Lindsey often stayed in Team houses with athletes and coaches where male coaches would share rooms and beds with female athletes at national competitions because the USSS did not have a separate budget for her lodging.  At least that is what she was told.

45.     Lindsey was aware that Foley's power was not simply with the Team, but extended well within the USSS organization, including operations which meant the communications department.

46.     Given Foley's connections in the USSS organization and snowboarding industry, Foley's approval and professional support were invaluable to Lindsey.

47.     At USSS-sponsored competitions, Lindsey was coerced, sexually harassed, and sexually assaulted by Foley, who exploited their unequal power dynamic.

48.     Foley forced Lindsey to take nude photos at a World Cup ski race for Foley's sexual gratification.  Specifically, Lindsey agreed to allow Foley to stay in her room, on a cot, at a World Cup ski race in Beaver Creek, Colorado—a competition where he was not coaching—in exchange for Foley allowing her to stay in the Team's house at another competition.  Under Foley, it was commonplace for the Team to share living spaces with Team employees during competitions and events.

49.     The opportunities to attend the events were invaluable to Lindsey because she aspired to advance her professional career.

50.    On a day when the competition had been postponed due to weather, Foley and Lindsey stayed in Lindsey's room to work.  Foley showed her photos he had taken of an athlete in the snow dressed in winter snowboarding gear and asked if Lindsey wanted to do a similar shoot, to which she agreed, believing the photos would be taken outside in the snow where she would be fully clothed, but then Foley directed her to be photographed sitting in bed with her bare back visible.

51.    Lindsey was intimidated and felt obligated to comply because she wanted to be a part of the Team family and with Foley at the head of it all, she needed to have his approval.

52.    Foley continued to pressure Lindsey to slowly reveal more and more of her body until she was completely nude.

53.    Lindsey was terrified, humiliated, and violated because Foley had all the control.

54.    Lindsey knew the power Foley had over her career and knew if she refused he would have the ability to destroy her career, including not selecting her to attend future competitions.

55.    Foley went even further and physically assaulted Lindsey.  On a separate night at the Beaver Creek competition, certain Team members and employees attended a group dinner.  Afterwards, Lindsey went to her bed to retreat for the night. Lindsey was lying in bed alone.  Suddenly, Foley crawled into Lindsey's bed and asked her to massage his back.  Fearful of what rejecting his request might mean for Lindsey and her career, she proceeded to rub his shoulders.  Foley went on to ask Lindsey to engage with him in sexual acts to which Lindsey repeatedly responded "no."  Despite Lindsey's rejections, Foley began groping her.  Foley went under Lindsey's clothes and touched her breasts and genitals without her consent.

56.    At first, Lindsey was frozen as she was terrified to confront the man everyone saw as superior.

57.     But still, Lindsey told Foley "no" and "stop!"  Foley did not stop there. He proceeded to push Lindsey onto her stomach and rubbed his exposed genitals on her bare back.  Foley masturbated and ejaculated onto Lindsey's back.

58.     Lindsey was terrified and could not report the abuse she endured because Foley had the nude photographs that he could hang over her head if she dared speak up.

59.     The next day, Foley acknowledged his abuse, apologizing to Lindsey for "forcing" himself onto her.

60.     Foley's abuse of Lindsey continued.

61.     After Foley coerced Lindsey to take nude photos and subsequently sexually assaulted her, Lindsey attended a different race competition where Foley was present.  At a postrace event with a group of coaches and athletes, Foley texted Lindsey asking her why she was ignoring him.

62.     Foley then followed Lindsey to an elevator, and proceeded to verbally harass her about her appearance, including her body and what she was wearing.

63.     Foley took retaliatory measures against Lindsey.  Foley visited the Ski Team offices in Park City, where Lindsey worked.  Lindsey pulled Foley aside, explaining to him that what he did to her was wrong, against her consent, and could never happen again.  She reminded Foley that he had ignored her repeated pleas of "no" and "stop."  Shortly after confronting Foley, and as a direct result of the confrontation, Lindsey was informed that she would not be allowed to go to the Olympics as the USSS Press Officer as she had hoped.  The Press Officer position at the Olympics is highly desirable because reporters are able to access special areas during the events.  Despite Lindsey's hard work for the USSS communications team, she was told by her boss that a male co-worker, who was not even a member of the USSS communications team, would instead serve as the Press Officer.

1  64.   Lindsey lost out on a career opportunity because she did not comply with

2  Foley's sexual demands.

3  65.   Lindsey's fear of further professional retaliation, coupled with the

4  trauma resulting from the abuse, led Lindsey to suppress the abuse and remain silent

5  about Foley's conduct.

6  66.   Lindsey did not report the assault until March of 2022 as a direct and

7  proximate result of the Foley's manipulation and intimidation, the affirmative steps

8  that he took during the abuse to keep her silent, and the affirmative steps the Foley

9  Sexual Abuse and Cover Up Enterprise and the USSS took in order to prevent

10  Lindsey from reporting Foley's misconduct.

11  67.   Accordingly, any statute of limitations applicable to Lindsey's claims,

12  if any, is tolled and Foley is estopped from raising such a defense as his actions

13  described above deprived Lindsey of the opportunity to commence this lawsuit before

14  now.

15  68.   Due to her constant anxiety and fear of Foley and her desire to refrain

16  from further abuse, Lindsey left the USSS organization altogether.

17  69.   Moreover, Lindsey's claims are also timely because they are revived

18  under AB-2777, also known as the Sexual Abuse and Cover Up Accountability Act,

19  which amends California Civil Procedure Section 340.16.

20  70.   Lindsey has suffered from the humiliation, guilt, shame, and disgust of

21  the sexual abuse and harassment she faced as a result of Foley's abuse of power.

22  Lindsey has also expended significant costs on therapy and suffers mental anguish,

23  severe emotional distress, and loss of enjoyment of life as a direct and proximate

24  result of Foley's abuse.

25  ///

26  ///

27

28

## II.   The Foley Sexual Abuse and Cover Up Enterprise, including the USSS, and Gale "Tiger" Shaw Protected Foley, Allowed Him Intimate Access to Athletes and Employees within the USSS, Ignored Allegations Against Him, and Interfered With Investigations Concerning His Abuse.

71.     Since its inception, the USSS has failed to treat female athletes and employees on the snowboarding and ski teams as professionals and failed to protect the safety of the young athletes and employees in their care, including at USSS-sponsored competitions.

72.     Defendant Gale "Tiger" Shaw was the President and Chief Executive Officer ("CEO") of the USSS from March 2014 to March 2022.  Before that, Shaw served as the Chief Operations Officer ("COO") of the USSS in 2013.

73.     Coaches and high-level executives encouraged and facilitated irresponsible and illegal behavior around alcohol, including underage drinking at USSS-sponsored competitions and driving under the influence.  The alcohol coupled with sexual harassment and a lack of boundaries, made for a toxic culture of abuse.

74.     The toxic culture of abuse fostered by Foley and others at the USSS bled across the organization over a long period of time.

75.     The USSS and Shaw enabled Foley's exploitation and abuse.

76.     The USSS and Shaw knew about the unlawful behavior yet failed to fulfill their duties to keep athletes and employees safe.

77.     The United States Center for SafeSport ("SafeSport") was established under the auspices of the Protecting Young Victims from Sexual Abuse and Safe Sport Authorization Act of 2017 ("the SafeSport Act").  *See* 132 Stat. 318, Pub. L. 115-126.

78.     The SafeSport Act provides a cause of action for conduct Lindsey was subjected to at the hands of Foley.  For example, under the SafeSport Act,

Any person who, while a minor, was a victim of a violation of section 1589, 1590, 1591, 2241(c), 2242, 2243, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, or 2423 of this title and who suffers personal injury as

a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court and shall recover the actual damages such person sustains or liquidated damages in the amount of $150,000, and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred. The court may also award punitive damages and such other preliminary and equitable relief as the court determines to be appropriate.

*Id.*

79.     The SafeSport Act established SafeSport as an independent entity to investigate reports of abuse and to protect athletes and employees from abuse across all Olympic Sports (collectively referred to as "the Movement"). The SafeSport Act establishes reporting requirements for a broad category of members of the NGBs.

80.     SafeSport established a SafeSport Code ("the Code") in 2017 that is periodically modified. The Code defines SafeSport's authority and jurisdiction, prohibited categories of misconduct, and SafeSport's process for responding to and resolving abuse and misconduct claims affecting the U.S. Olympic and Paralympic Movement.[1] The operative SafeSport Code prohibits much of the conduct that Lindsey was subjected to at the hands of Defendants.

81.     The Code is binding on NGBs and provides SafeSport with "the exclusive jurisdiction to investigate and resolve allegations that a Participant engaged in . . . 1. Sexual Misconduct . . . 3. Misconduct Related to Reporting . . . 4. Misconduct Related to Aiding and Abetting[.]"[2] The Code bars NGBs from investigating and resolving allegations of misconduct that SafeSport has exclusive jurisdiction over, although it allows NGBs to "implement necessary and appropriate measures, up to and including suspension, to address any allegations of misconduct."[3]

---

[1] *See* https://uscenterforsafesport.org/response-and-resolution/safesport-code/.

[2] The SafeSport Code, effective April 1, 2022, at Section IV.A., https://uscenterforsafesport.org/wp-content/uploads/2022/02/2022-SafeSport-Code.pdf.

[3] The SafeSport Code, effective April 1, 2022, at Section V.A., https://uscenterforsafesport.org/wp-content/uploads/2022/02/2022-SafeSport-Code.pdf.

82.     Moreover, the Code provides that:

The obligation to report is broader than reporting a pending charge or criminal arrest of a Participant; it requires reporting to the Center any conduct which, if true, would constitute Sexual Misconduct or Child Abuse.  The obligation to report to the Center is an ongoing one and is not satisfied simply by making an initial report. The obligation includes reporting, on a timely basis, all information of which an Adult Participant becomes aware, including the names of witnesses, third-party reporters, and Claimants.

83.     An "Adult Participant" with duties to report sexual misconduct under the Code, includes:

Any individual who is seeking to be, currently is, or was at the time of an alleged Code violation:
   a.  A member or license holder of an NGB, LAO, or the USOPC;
   b.  An employee or board member of an NGB, LAO, or the USOPC;
   c.  Within the governance or disciplinary jurisdiction of an NGB, LAO, or the USOPC;
   d.  Authorized, approved, or appointed by an NGB, LAO, or the USOPC to have regular contact with or authority over Minor Athletes.

84.     Prior to reporting to SafeSport, Callan made formal complaints to Shaw of Foley's harassment and sexual abuse, including that he was taking nude photos of young women on the Team and within the USSS organization without their consent. Shaw was an "Adult Participant" with duties to report sexual misconduct under the SafeSport Act and the Code.  Despite his reporting obligations, Shaw failed to take action to protect young athletes and refused to instruct Callan or victims of his abuse on how to report to SafeSport.   In particular, Shaw never sanctioned Foley, implemented *any* new procedures for co-ed traveling, or even encouraged other athletes or employees that the USSS took sexual misconduct and safety seriously.

85.     In or about and between 2020 and 2022, Callan again reported Foley's sexual abuse, including that he was taking nude photos of young women on the Team and within the USSS organization without their consent, to Abbi Nyberg, a Program

Manager at USSS and one of the few female employees of the organization. Callan trusted that Nyberg would protect her and other female athletes, but Nyberg failed to take the required action. Nyberg was an "Adult Participant" with duties to report sexual misconduct under the SafeSport Act and the Code. Despite Nyberg's position at USSS, she did not report or take any steps in response to Callan's reporting to ensure the safety of athletes and employees.

86. Later, Callan yet again reported Foley's abuse, including that he was taking nude photos of young women on the Team and within the USSS organization without their consent, to Jeffery Archibald, who was an assistant coach on the Team. Archibald was an "Adult Participant" with duties to report sexual misconduct under the SafeSport Act and the Code. Archibald failed to fulfill his reporting obligations.

87. In March of 2022, former professional snowboard Team athletes, Rosey, Callan, and Erin O'Malley, also a World Cup and World Champion, reported Foley's sexual abuse to the current General Counsel for the USSS, Allison Pitt, who failed to fulfill her reporting obligations and obstructed reporting efforts by providing false information about SafeSport and SafeSport's process. Indeed, Pitt falsely told Rosey, Callan, and Erin that they could not report to SafeSport if they wished to remain anonymous. This was simply not true. Section X.A.2, specifically provides that "Nothing in this Code shall be construed to require a victim of child abuse or other misconduct to self-report." Fully aware of their individualized fear of Foley, Pitt also warned Rosey, Callan, and Erin that they would be required to confront Foley face-to-face if they reported to SafeSport despite that not being a requirement. This revelation further deterred Lindsey from coming forward.

88. Pitt's response to Rosey, Erin, and Callan's reports caused them and Lindsey emotional distress, as they thought their claims were finally going to be heard and that there was going to be action taken against Foley. Pitt was an "Adult Participant" with duties to report sexual misconduct under the SafeSport Act and the

Code.   These interactions with Pitt resulted in additional confusion and delayed legitimate investigative processes. This only further distressed Lindsey.

89.   Rosey and Erin also reported the sexual abuse to Sophie Goldschmidt, the current and first ever female President and CEO of the USSS.  Goldschmidt was an "Adult Participant" with duties to report sexual misconduct under the SafeSport Act and the Code.  Goldschmidt provided hope that there would be a response to their sexual abuse claims.  Instead, their complaints, once again, fell on deaf ears, and they were met with confusion and a failure to act.

90.   After Pitt's dissuading remarks that reporting to SafeSport would be an "extensive and challenging reporting process," Goldschmidt doubled down on Pitt's comments confirming that Pitt was "transparent that the process may take time."  Lindsey was made aware of these remarks and was further discouraged from reporting.  Lindsey truly believed that if Team athletes were being abused, deterred from reporting, and ultimately left unprotected, her own reporting would go unheard.  To Lindsey, athletes associated with the USSS were the center of the organization; if they were left to Foley's abuse, she, as an employee of USSS, would be too.

91.   In February 2022, Lisa Kosglow, who was a member of the USSS board, attempted to interfere with the investigation into Foley.  Kosglow was an "Adult Participant" with duties to report sexual misconduct under the SafeSport Act and the Code.  Kosglow, who is neighbors and good friends with Foley, called Rosey on February 16, 2022, and said Foley asked Kosglow if she would reach out to Rosey on his behalf.

92.   Kosglow also impermissibly called Erin and tried to pressure her by explaining that Foley "was so devastated as a result of the abuse reports."  Despite these direct complaints, Kosglow never reported the allegations to SafeSport as promised.  Moreover, she violated the Code which is clear that—at all times—the USSS was precluded from independently investigating allegations of sexual abuse.

93.     In March 2022, Lindsey filed formal complaints with SafeSport against Foley, reporting her allegations of Foley's sexual abuse and harassment, and the USSS's impermissible interference.

94.     On March 18, 2022, SafeSport temporarily suspended Foley pending its investigation and listed Foley in the SafeSport database as a recipient of temporary restrictions with a general account of the charges pending against him.

95.     Despite the pending investigation, Foley went to a post-Olympics competition, where he interacted with athletes and employees, and sought assurances from them that they would speak up in his favor amidst the sexual abuse allegations against him.

96.     Despite the pending sexual abuse claims against him, the USSS did nothing to prevent Foley from attending this USSS-sponsored competition which allowed him intimate access to athletes and employees of the USSS at the precise time the allegations of this complaint were publicly lodged.

97.     On March 20, 2022, the USSS released a statement that Foley was terminated by the organization after reports surfaced of his contribution to a "toxic culture among the team in the workplace where certain athletes were favored over others."   The USSS made this statement, specifying that Foley had not been suspended because of the accusations of sexual abuse, even though under the Code, the USSS had authority to take temporary measures and implement a safety plan to protect athletes and employees against him and his sexual abuse.

98.     On March 22, 2022, ESPN released an article recounting the experiences Lindsey, Rosey, Erin, and Callan suffered and reporting that they filed their complaints with SafeSport.[4]

---

[4] https://www.espn.com/olympics/snowboarding/story/_/id/33564119/women-detail-new-sexual-assault-misconduct-allegations-ex-us-snowboard-coach-peter-foley.

99.     In response to the ESPN article, Senator Charles E. Grassley (R), on behalf of the Senate Judiciary Committee, sent a letter to Goldschmidt and Pitt, copying Ju'Riese Colon, the current CEO of SafeSport.  The letter expressed concern with the "sexual misconduct committed by Peter Foley" and "allegations of interference by U.S. Ski and Snowboard[.]"  The letter also stated that SafeSport had reported to the Judiciary Committee, pursuant to the SafeSport Act, that USSS was "interfering with an investigation concerning the abuse of athletes."  The letter went on to say:

> The reports shared by the Center are very troubling.  They allege that U.S. Ski and Snowboard leadership has been conducting its own investigation outside of the investigation being conducted by the Center, has failed to make notifications regarding sexual misconduct to the Center, and has failed to timely provide the Center with evidence in the possession of U.S. Ski and Snowboard.  Further, it has been reported that U.S. Ski and Snowboard has actively provided misinformation to individuals involved in the investigation in an effort to discourage participation in the Center's investigation and to attempt to identify who may be participating in the investigation.

100.    As of the date of the instant filing, SafeSport's investigations of the USSS's and Foley's wrongdoing remain ongoing.

**A.      The Foley Sexual Abuse and Cover Up Enterprise.**

101.    Throughout the alleged period, the Foley Sexual Abuse and Cover Up Enterprise had the common purpose of preventing (or attempting to prevent) the reporting, prosecution, or disclosure of Foley's sexual abuse, sexual assault, mental abuse, and exploitive or retaliatory behavior.

102.    The Foley Sexual Abuse and Cover Up Enterprise also shared the common purpose of covering up Foley's sexual abuse, sexual assault, mental abuse, and exploitive or retaliatory behavior.  To achieve their common goals, Defendants

hid from the general public the unlawfulness of Foley's conduct and suppressed and/or ignored warnings and complaints from Lindsey and others about Foley's conduct.

103.   Defendants' scheme and the above-described racketeering activities amounted to a common course of conduct intended to cause Lindsey and others to hide and conceal Foley's conduct.  Each such racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results affecting similar victims, including Lindsey. Defendants' illicit activities are part of their ongoing business and constitute a continuing threat to Lindsey and her property.

104.   Lindsey has been injured in her property and business by reason of these violations.  Defendants interfered with Lindsey's current and prospective contractual relations, because Lindsey lost opportunities to work at certain competitions.

105.   The efforts to protect Foley and cover up his grave abuse not only allowed for intimidation of current athletes and employees—to get their public support of Foley—but also involved efforts to stifle reporting so that Foley could continue to be protected at the peril of athletes and employees of USSS.

106.   Had Members of the Foley Sexual Abuse and Cover Up Enterprise not been complicit and had they reported or implemented safety mechanisms instead of concealing Foley's predatory behavior, Lindsey would not have been injured. Therefore, Lindsey's injuries were directly and proximately caused by Defendants' racketeering activities.

107.   Foley, the USSS, and Shaw comprised the Foley Sexual Abuse and Cover Up Enterprise within the meaning of RICO, 18 U.S.C. 1961(4); that is, the Foley Sexual Abuse and Cover Up Enterprise constituted a group of individuals associated in fact that was engaged in, and the activities of which affected, interstate and foreign commerce. The Foley Sexual Abuse and Cover Up Enterprise constituted

an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Foley Sexual Abuse and Cover Up Enterprise.

108.   The purposes of the Foley Sexual Abuse and Cover Up Enterprise were to develop the Team, and to recruit women and girls to participate in the sport and to engage in illegal sexual activity with Foley and Members of the Foley Sexual Abuse and Cover Up Enterprise.   By promoting the Foley Sexual Abuse and Cover Up Enterprise, keeping quiet about the criminal conduct, and enabling Foley and others, Members of the Foley Sexual Abuse and Cover Up Enterprise expected to receive financial opportunities and personal benefits, including increased power and status within the Foley Sexual Abuse and Cover Up Enterprise.

109.   The Foley Sexual Abuse and Cover Up Enterprise had the common purpose of preventing (or attempting to prevent) the reporting, prosecution, or disclosure of Foley's sexual misconduct through threats and misrepresentations to Lindsey and others.   In particular, the Foley Sexual Abuse and Cover Up Enterprise lured Lindsey away from making formal complaints with the appropriate channels of SafeSport by promising Lindsey and others they would investigate the conduct.   The Foley Sexual Abuse and Cover Up Enterprise shared the common purpose of intervening in Lindsey's efforts to report the sexual assault and harassment she witnessed and endured.   Instead, those complaints were never investigated and no one from the USSS took action to remedy the gross harm caused by Foley and others.

110.   Participants in the Foley Sexual Abuse and Cover Up Enterprise determined its members and assigned each member with a specific task to fulfill these common purposes of using false pretenses to prevent Lindsey and others from reporting Foley's sexual misconduct.   Foley was personally aware and permitted the progress of these acts.

111.   Foley Sexual Abuse and Cover Up Enterprise participant Gale "Tiger" Shaw, former CEO of the USSS, became aware that Foley was pressuring young female athletes and employees to take nude and sexually suggestive photos, yet failed to meet his reporting obligations.  As CEO, Shaw failed to use reasonable care in investigating Foley and failed to take reasonable steps to ensure the safety of minors and young women, including Lindsey, from sexual harassment, molestation, and abuse.  Shaw never implemented or sought to create a reasonable system of reporting abuse allegations or mechanisms for coaches and staff to prevent pre-sexual grooming, sexual harassment, molestation and abuse of children and young adults. Shaw's history of inaction was in furtherance of the goals and objectives of the Foley Sexual Abuse and Cover Up Enterprise: to facilitate an environment that permitted or encouraged Foley to continue to be a sexual predator against vulnerable female athletes and employees.  While CEO of USSS, Shaw personally benefitted from Foley's standing as a coach with a history of coaching athletes to Olympic and World Cup victories during his tenure.

112.   Foley Sexual Abuse and Cover Up Enterprise participant Alison Pitt, former General Counsel of the USSS, failed to fulfill her reporting obligations and obstructed reporting efforts.  Pitt lied to Rosey, Callan, and Erin about SafeSport and SafeSport's reporting process in an effort to conceal Foley's wrongdoing and continue to benefit from Foley's coaching ability and longtime tenue with the USSS. Pitt's conduct in intervening in the reporting process effectively prevented others, including Lindsey, from making their own independent reports because she falsely promised she would report to SafeSport.

113.   Foley Sexual Abuse and Cover Up Enterprise participant Lisa Kosglow, member of the USSS Board and personal friend of Foley, interfered with the investigation by calling Rosey and Erin.  Particularly, Kosglow called Rosey and said she was calling on behalf of Foley who directly requested that Kosglow reach out to

Rosey to get her take on what was going on.  Kosglow also called Erin in order to discourage her from reporting the assault because Foley "was so devastated as a result of the abuse reports."  Kosglow knew of Foley's misconduct and agreed to personally contact certain individuals, like Lindsey, in order to threaten and discourage further reports so she could continue to benefit from the USSS's relationship with Foley as a board member and also preserve the personal friendship she has with Foley.

114.  Foley Sexual Abuse and Cover Up Enterprise participant Sophie Goldschmidt, current CEO of USSS, was also aware of Foley's misconduct and failed to follow her obligations to report the abuse.  Instead, she cautioned Callan and falsely reiterated that reporting to SafeSport is an "extensive and challenging process" (as Kosglow warned) in order to discourage Lindsey and others from reporting. Goldschmidt was aware of Foley's misconduct, and not only failed to follow her duties to report the abuse, but instead exaggerated the complexity of the reporting process to SafeSport in an effort to evade her obligations, discourage Lindsey and others from reporting, and accommodate Foley's gross sexual misconduct.  As CEO of USSS, Goldschmidt personally benefitted from Foley's standing as a coach with a history of coaching athletes to Olympic and World Cup victories for decades.

115.  Foley Sexual Abuse and Cover Up Enterprise participant Abbi Nyberg, a program manager for USSS, developed a trusting relationship with Callan.  She listened to details of sexual abuse and harassment of Foley and other male athletes. Callan explained that Foley was taking nude and sexually suggestive photos of young women on the team.  Nyberg then took a job as program manager of the USSS and never reported Foley's misconduct.  Nyberg gained Callan's trust and turned a blind eye to Callan's pleas when she personally gained a higher position in her career. Nyberg's conduct in failing to report the misconduct effectively concealed additional testimony of Foley's misconduct.

116.   Foley Sexual Abuse and Cover Up Enterprise participant Alan Ashley, a former executive within the snowboarding organization, willfully endeavored to prevent athletes and employees from continuing to report in order to protect claims against Foley's misconduct.

117.   USSS convened a Team athlete meeting to corral support for Foley.

118.   In furtherance of the Foley Sexual Abuse and Cover Up Enterprise, Defendants and other Members of the Abuse Enterprise travelled nationally and internationally to promote the Team, coach, and compete at training camps and competitions, and recruit women and girls to engage with Foley and the Team.

119.   Foley and other Members of the Foley Sexual Abuse and Cover Up Enterprise invited women and girls to travel with the Team, participate in "development" programs, and train at USSS-sponsored training camps.

120.   Foley also had access to young women employed by the USSS via Members of the Foley Sexual Abuse and Cover Up Enterprise and as a result of his power within the organization.

121.   Foley communicated with female athletes and USSS employees by email and telephone through the use of traditional calls and text messages.

122.   Foley and other Members of the Foley Sexual Abuse and Cover Up Enterprise also arranged for the women and girls to travel to meet Foley on occasion at training camps and other competitions.

123.   Among the means and methods by which Foley and other Members of the Foley Sexual Abuse and Cover Up Enterprise participated in the conduct of the affairs of the Foley Sexual Abuse and Cover Up Enterprise were the following:

        a.   Committing, attempting, and aiding and abetting the commission of crimes and conspiring to commit crimes, including but not limited to engaging in non-consensual sexual activity, taking advantage of the power dynamic of coach over subordinate

employee or athlete, engaging in sexual activity with girls under 18 years old, extortion, coercion, and blackmail;

b.   Promoting Foley within the Abuse Enterprise and empowering him to have decision-making over who would succeed within the organization, including who would be selected to compete in the Olympics;

c.   Obtaining sensitive information about members and associates of the Foley Sexual Abuse and Cover Up Enterprise to maintain control over them;

d.   Taking embarrassing, degrading, and sexually suggestive photos of female employees and athletes to maintain power and control over them;

e.   Recruiting and grooming female employees and athletes for Foley; and

f.   Isolating women and girls from friends and family and making them dependent on Foley and the Foley Sexual Abuse and Cover Up Enterprise for their financial wellbeing.

**B.   Foley, Emboldened by the Foley Sexual Abuse and Cover Up Enterprise, Defamed and Discredited Lindsey.**

124.   In early February 2022, via social media platform, Instagram, Callan publicly exposed Foley's sexual misconduct, including reports of Foley having taken naked photos of female athletes and employees for decades, making sexual explicit comments, and other abuse.

125.   Following Callan's public allegations, many other survivors of Foley's sexual abuse came forward, including Lindsey.

126.    In February and March of 2022, Foley undertook a concerted and malicious effort to discredit Lindsey and to damage her reputation by claiming that her reports of what she suffered from at the hands of Foley should not be credited.

127.    On or about February 11, 2022, Foley issued a false statement to the media and public designed to maliciously discredit Lindsey.    That statement contained the following deliberate falsehoods:

        a.    That Foley "**was totally surprised by the allegations.**"

        b.    That Foley "**vehemently den[ies] the allegations.**"

128.    In addition to Foley's own verbal attacks and as part of Foley's efforts, he directed his agent and attorney, Howard Jacobs, to attack Lindsey's truthfulness and integrity and to accuse her of lying.

129.    On or about March 20, 2022, speaking through his authorized agent, Foley issued additional false statements to the media and public reiterating that Foley denies the allegations against him and in an attempt to further discredit Lindsey and damage her reputation, stating:

        a.    "**Any allegations of sexual misconduct being made against [Foley] are false.**"

        b.    "**Mr. Foley has not engaged in any conduct that violates the SafeSport Code.**"

Counting on the Foley Sexual Abuse and Cover Up Enterprise's protection, Foley issued these statements, knowing they were false, in a deliberate attempt to devalue Lindsey's credibility.

///

///

///

# FIRST CAUSE OF ACTION

Violation of 18 U.S.C. §§ 1962(c), 1964(c) – Racketeer Influenced and Corrupt Organizations Act (RICO)
(*Plaintiff Lindsey Nikola Against All Defendants*)

130.   Plaintiff Lindsey re-alleges and incorporates by reference herein the allegations contained herein above in paragraphs 1–129, as though fully set forth and brought in this cause of action.

131.   Defendants are "persons" within the meaning of 18 U.S.C. § 1961(3) who conducted the affairs of the Foley Sexual Abuse and Cover Up Enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

132.   The Foley Sexual Abuse and Cover Up Enterprise is an association-in-fact within the meaning of 18 U.S.C. § 1961(4) consisting of: (i) Defendants, including each of their employees and agents; (ii) the Foley Sexual Abuse and Cover Up Enterprise Participants, including but not limited to Foley, the USSS, and its executives, Gale "Tiger" Shaw, Alan Ashley, Abbi Nyberg, Jeffery Archibald, Allison Pitt, Lisa Kosglow, and Sophie Goldschmidt; and (iii) other unnamed co-conspirators as set forth above.  The Foley Sexual Abuse and Cover Up Enterprise is an ongoing organization that functions as a continuing unit.  As set forth above, the Foley Sexual Abuse and Cover Up Enterprise was designed and used as a tool to effectuate Foley and the Foley Sexual Abuse and Cover Up Enterprise Participants to participate in a pattern of racketeering activity.

133.   Section 1964(c) provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of suit, including a reasonable attorney's fee."  18 U.S.C. § 1964.

134.   The Foley Sexual Abuse and Cover Up Enterprise falls within the meaning of 18 U.S.C. § 1961(4) and consists of a group of "persons" associated together for the common purpose of: (i) endorsing and facilitating Foley's sexual harassment and abuse of athletes and subordinate personnel, while creating a similar environment for the Team, (ii) harassing and misleading Foley's victims to prevent the reporting, disclosure, or prosecution of his sexual acts, and (iii) intervening in Lindsey's and other victims' efforts to report by concealing and refusing to report Foley's sexual offenses to the appropriate authorities, including SafeSport.

135.   Defendants have conducted and participated in the affairs of the Foley Sexual Abuse and Cover Up Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1) and 1961(5), which includes multiple instances of obtaining a victim for the purpose of committing or attempting to commit aggravated sexual abuse in violation of 18 U.S.C. §§ 1590 and 1591 as described above, and multiple instances of transporting female employees and athletes for the purposes of furthering the common purposes of the Foley Sexual Abuse and Cover Up Enterprise, including sexual abuse, sexually illicit photography, and other immoral purposes in violation of 18 U.S.C. § 2421, also known as the Mann Act.  The pattern of racketeering activity also included multiple instances of mail and wire fraud through use of interstate channels described below.

136.   The Foley Sexual Abuse and Cover Up Enterprise engaged in and affected interstate commerce, where Defendants utilized phone, email, and mail in order to threaten and intimidate Lindsey and make arrangements for Foley to further his illicit sexual activities.

137.   Each participant in the Foley Sexual Abuse and Cover Up Enterprise had a systemic linkage to each other participant through corporate ties, contractual relationships, and employment relationships, and functioned as a continuing unit for the purpose of furthering the scheme and their common purposes.

138.   Defendants used the mail and wires for the transmission, delivery, travel, and transportation of the following that were a result of Defendants' illicit scheme:

      a.   Contracts amongst and between Foley, the USSS, Shaw, Nyberg, and Goldschmidt;

      b.   Wires and mails between the USSS, Shaw, Nyberg, and Goldschmidt, regarding Foley's sexual misconduct, his victims, and concealing his acts to prevent reporting and prosecution;

      c.   Travel and transportation of athletes and employees such as Lindsey to various competitions and snowboarding events;

      d.   Electronic transmissions through cellular phone and electronic mail to transmit elicit photographs of Lindsey and female athletes; and

      e.   Message transmissions through electronic channels such as text messages, electronic mail, and telephone in order to invite and facilitate meetings and contact with Lindsey in order to further sexual harassment and abuse.

139.   Defendants utilized the interstate, mail, and wires for the purpose of obtaining money or property, such as Olympic medals, by means of omissions, false pretenses, and misrepresentations described therein.

140.   Defendants also used the internet and other electronic facilities to carry out the scheme and conceal the ongoing sexual and fraudulent activities taking place within the Foley Sexual Abuse and Cover Up Enterprise.

141.   The mail and wire transmissions described herein were made in furtherance of Defendants' scheme and common purpose to deceive authorities, such as SafeSport, and the public about Foley's sexual misconduct.

///

///

142.   To achieve their common goals, Defendants hid from the general public the unlawfulness of Foley's conduct and Defendants suppressed and/or ignored warnings from Lindsey, other victims, and third parties about his conduct.

143.   Defendants' scheme and the above-described racketeering activities amounted to a common course of conduct intended to cause Lindsey and others to hide and conceal Foley's conduct.  Each such racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results affecting similar victims, including Lindsey. Defendants' fraudulent activities are part of their ongoing business and constitute a continuing threat to Lindsey's property.

144.   The pattern of racketeering activity alleged herein and the Foley Sexual Abuse and Cover Up Enterprise are separate and distinct from each other.  Defendants engaged in a pattern of racketeering activity alleged herein for the purpose of conducting the affairs of the Foley Sexual Abuse and Cover Up Enterprise.

145.   Lindsey has been injured in her property and business by reason of these RICO violations.  Defendants interfered with Lindsey's current and prospective relations with current and forthcoming business contracts as a result of Foley's conduct.

146.   By reason of and as a result of Defendants' conduct in furtherance of the Foley Sexual Abuse and Cover Up Enterprise and resulting RICO violations, Lindsey has been injured in her property and business.  As detailed above, Lindsey suffered direct interference with promised work and severe damage to her professional and business interests.  As a result of the assaults and harassment perpetuated by and allowed by Defendants, Lindsey was denied participation to cover select competitions, and particularized assignments, and thus lost revenue.

147.   In particular, Foley's assault and Defendants' RICO violations have caused deep distress to Lindsey.  She felt defenseless against Foley's position and

power.   She experienced fear, helplessness, anger, and depression.   She sought professional help in order to process her pain.   Although Lindsey had spent years working towards a career in sports media, she decided, at the expense of advancing in her career, not to continue in order to escape Foley and his sexual abuse.   Lindsey has not worked in the industry since her departure from USSS.

148.   As a result, Lindsey has lost business opportunities to attend and provide press management and communications coverage during high profile snowboarding competitions and events.   Ultimately, Lindsey's professional career in the sports industry as a communications professional was damaged, causing her to leave that segment of the industry entirely.

149.   At all relevant times, all Defendants and their co-conspirators were aware of the essential nature and scope of the Foley Sexual Abuse and Cover Up Enterprise and intended to participate in it.

## SECOND CAUSE OF ACTION

Violation of 18 U.S.C. §§ 1591(a), 1595(a) – Sex Trafficking
(*Plaintiff Lindsey Nikola Against Defendants Peter Foley and USSS*)

150.   Plaintiff Lindsey re-alleges and incorporates by reference herein the allegations contained herein above in paragraphs 1–129, as though fully set forth and brought in this cause of action.

151.   Foley knowingly enticed Lindsey to engage in sexual acts, including taking nude photos, for him based on coercion, fear, and the false hope that doing so and remaining quiet about it would aid her professional career, in violation of 18 U.S.C. § 1591(a)(1).

152.   Foley knowingly benefited from the abuse he inflicted on Lindsey using force and coercion to make Lindsey engage in sex acts for commercial gain and advantage, in violation of 18 U.S.C. § 1591(a)(2).

153.   The USSS recklessly disregarded the fact that means of force, threats of force, fraud, and/or coercion would be used to cause Lindsey to engage in a commercial sex act in exchange for her participation in USSS-sponsored competitions, which they benefited from financially.

154.   The conduct of Foley and the USSS affected interstate commerce, including, but not limited to, because Foley enticed Lindsey to cross state lines with him for USSS sponsored competitions under the pretense that doing so would further her career in exchange for engaging in and keeping quiet about sex acts.

155.   Lindsey did not pursue legal remedies until now as a direct and proximate result of the Foley's intimidation, control, manipulation, and the affirmative steps that he took during the abuse to keep her silent, and the affirmative steps the Foley Sexual Abuse and Cover Up Enterprise and the USSS took in order to prevent Lindsey from reporting Foley's misconduct.

156.   Accordingly, any statute of limitations applicable to Lindsey's claims, if any, is tolled. Foley's actions described above deprived Lindsey of the opportunity to commence this lawsuit before now.

157.   As result of Foley and the USSS's conduct, Lindsey has expended significant costs on therapy and suffered damages including deprivation of income and benefits, loss of employment opportunities, severe physical and emotional distress, pain and suffering, mental anguish, humiliation, loss of enjoyment of life, and damage to her reputation and career.

158.   Foley and the USSS's unlawful and discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Lindsey's rights.

159.   Lindsey claims compensatory and punitive damages herein.

160.   The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

**THIRD CAUSE OF ACTION**

Civil Code § 1708.5 – Sexual Battery
(*Plaintiff Lindsey Nikola Against Defendant Peter Foley*)

161.   Plaintiff Lindsey re-alleges and incorporates by reference herein the allegations contained herein above in paragraphs 1–129, as though fully set forth and brought in this cause of action.

162.   Foley committed acts with the intent to cause a harmful or offensive contact with an intimate part of Lindsey, and a sexually offensive and unwanted contact with Lindsey directly resulted from Foley's said acts.

163.   Further, Foley committed acts with the intent to cause a harmful or offensive contact with Lindsey by use of Foley's intimate part, and a sexually offensive and unwanted contact with Lindsey directly resulted from Foley's said acts.

164.   Foley exploited his position of authority to intimidate, overwhelm, and subdue Lindsey.  Any objections to his conduct would be met with retaliation.

165.   Foley abused his position of power and authority over Lindsey, who was in no position to reject his sexual advances due to her vulnerability.

166.   Foley's batteries on Lindsey caused physical injury, severe mental and emotional distress, pain and suffering, mental anguish, and loss of enjoyment of life.

167.   Foley's unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Lindsey's rights.

168.   Lindsey claims compensatory and punitive damages herein.

169.   The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

///

///

///

-33-

COMPLAINT

# FOURTH CAUSE OF ACTION

### Battery
(*Plaintiff Lindsey Nikola Against Defendant Peter Foley*)

170.   Plaintiff Lindsey re-alleges and incorporates by reference herein the allegations contained herein above in paragraphs 1–129, as though fully set forth and brought in this cause of action.

171.   Foley intended to commit and committed acts of unwanted contact with Lindsey.

172.   Foley committed unwanted contact with Lindsey in a harmful and offensive manner, including but not limited to by inflicting sexual abuse against Lindsey.

173.   Among other batteries, Foley sexually abused Lindsey without her consent, without equality, and as a result of coercion.

174.   Foley exploited his position of authority to intimidate, overwhelm, and subdue Lindsey.  Any objections to his conduct were met with retaliation.

175.   Foley abused his position of power and authority over Lindsey, who was in no position to reject his sexual advances due to her vulnerability.

176.   Foley's batteries on Lindsey caused physical injury, severe mental and emotional distress, pain and suffering, mental anguish, and loss of enjoyment of life.

177.   Foley's unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Lindsey's rights.

178.   Lindsey claims compensatory and punitive damages herein.

179.   The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

///

///

## FIFTH CAUSE OF ACTION

California Civil Code § 340.16 – Sexual Assault
(*Plaintiff Lindsey Nikola Against Defendants Peter Foley and USSS*)

180.   Plaintiff Lindsey re-alleges and incorporates by reference herein the allegations contained herein above in paragraphs 1–129, as though fully set forth and brought in this cause of action.

181.   Foley touched an intimate part of Lindsey, against her will, for sexual arousal, sexual gratification, or sexual abuse.

182.   Foley committed sexual acts against Lindsey's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on Lindsey.

183.   Foley's conduct placed Lindsey in reasonable apprehension of bodily harm.

184.   Foley's actions caused Lindsey to fear retaliation in the future and there was a reasonable possibility that Foley could execute on a threat of retaliation.

185.   Foley's assaults on Lindsey caused physical injury, severe mental and emotional distress, pain and suffering, mental anguish, and loss of enjoyment of life.

186.   Foley's unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Lindsey's rights.

187.   Lindsey claims compensatory and punitive damages herein.

188.   One or more entities, including, but not limited to the USSS, are legally responsible for damages arising out of Foley's sexual assault against Lindsey.

189.   The USSS, including, but not limited to, its officers, directors, representatives, employees, or agents, engaged in a cover up or attempted a cover up of a previous instance or allegations of sexual assault by Foley of such abuse.

190.   Newly enacted CCP 340.16, effective January 1, 2023, is the governing California State Statute extending the statute of limitations and granting revival of a plaintiff's claims seeking to recover damages suffered as a result of a sexual assault that occurred on or after the plaintiff's 18th birthday when one or more entities are legally responsible for damages and the entity or their agents engaged in a cover up.

191.   The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

### SIXTH CAUSE OF ACTION
Assault
(*Plaintiff Lindsey Nikola Against Defendant Peter Foley*)

192.   Plaintiff Lindsey re-alleges and incorporates by reference herein the allegations contained herein above in paragraphs 1–129, as though fully set forth and brought in this cause of action.

193.   Foley intentionally attempted, threatened, and committed harmful and offensive contacts against Lindsey, including but not limited to inflicting sexual abuse and physical abuse against Lindsey.

194.   Foley's conduct placed Lindsey in reasonable apprehension of bodily harm.

195.   Foley's assaults on Lindsey caused physical injury, severe mental and emotional distress, pain and suffering, mental anguish, and loss of enjoyment of life.

196.   Foley's unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Lindsey's rights.

197.   Lindsey claims compensatory and punitive damages herein.

198.   The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

///

///

## SEVENTH CAUSE OF ACTION

### Defamation
*(Plaintiff Lindsey Nikola Against Defendant Peter Foley)*

199. Plaintiff Lindsey re-alleges and incorporates by reference herein the allegations contained herein above in paragraphs 1–129, as though fully set forth and brought in this cause of action.

200. In February and March of 2022, and thereafter, Foley intentionally and maliciously released to the press his false statements about Lindsey in an attempt to destroy Lindsey's reputation and cause her to lose all credibility in her efforts to help victims of Foley's sexual abuse.

201. Specifically, on or about February 11, 2022, Foley made the statement that he "was totally surprised by the allegations" and that he "vehemently den[ies] the allegations."

202. Moreover, speaking through his attorney and authorized agent, Foley issued additional false statements on or about March 20, 2022 to the media and public reiterating that "any allegations of sexual misconduct being made against [Foley] are false." And that "Mr. Foley has not engaged in any conduct that violates the SafeSport Code."

203. Foley released to the press his false statements with knowledge that his words would dilute, discredit, and neutralize Lindsey's public and private messages to Foley's sexual abuse victims.

204. Using his role as a powerful figure in the snowboarding industry, Foley's statements were published in sports-related media and press for the malicious purpose of further keeping other survivors in the snowboarding industry silent and to destroy Lindsey's reputation, credibility, and efforts to use her experience to help others who

previously suffered, currently are suffering, or continue to suffer at the hands of Foley.

205.   Foley, personally and through his attorney and authorized agent, Howard Jacobs, intentionally and maliciously made false and damaging statements of fact concerning Lindsey, as detailed above.

206.   The false statements made by Jacobs were all made by him as Foley's attorney and authorized agent and were made with direct and actual authority from Foley as the principal.

207.   The false statements that Foley made personally, and through his attorney and authorized agent, Jacobs, not only called Lindsey's truthfulness and integrity into question, but also exposed Lindsey to public hatred, contempt, ridicule, and disgrace.

208.   Foley made his false statements knowing full well that they were completely false.  Accordingly, he made his statements with actual and deliberate malice, the highest degree of awareness of falsity.

209.   Foley's false statements constitute libel, as he knew that they were going to be transmitted in writing and widely disseminated on the internet and in print. Foley intended his false statements to be published by newspaper and other media outlets, and they were, in fact, published globally.

210.   Foley's false statements constitute libel per se inasmuch as they exposed Lindsey to public contempt, ridicule, aversion, and disgrace, and induced an evil opinion of Lindsey in the minds of right-thinking persons.

211.   Foley's false statements directly stated and also implied that in speaking out against sexual abuse Lindsey acted with fraud, dishonesty, and unfitness for the task.

212.   Foley's false statements directly and indirectly indicate that Lindsey lied about being sexually abused by Foley.  Foley's false statements were reasonably

understood by many persons who read his statements as conveying that specific intention and meaning.

213.   Foley's false statements were reasonably understood by many persons who read those statements as making specific factual claims that Lindsey was lying about specific facts.

214.   As a result of Foley's campaign to spread false, discrediting, and defamatory statements about Lindsey, Lindsey suffered substantial damages in an amount to be proven at trial.

215.   Foley's false statements have caused, and continue to cause, Lindsey economic damage, psychological pain and suffering, mental anguish and emotional distress, and other direct and consequential damages and losses.

216.   Foley's campaign to spread his false statements globally was unusual and particularly egregious conduct.  Foley sexually abused Lindsey, and then, in order to avoid having these crimes discovered, Foley wantonly and maliciously set out to falsely accuse, defame, and discredit Lindsey.  In so doing, Foley's efforts constituted a public wrong by deterring, damaging, and setting back Lindsey's efforts to help other victims of Foley's sexual abuse.  Accordingly, this is a case in which exemplary and punitive damages are appropriate.

217.   Punitive and exemplary damages are necessary in this case to deter Foley and others from wantonly and maliciously using a campaign of lies to discredit Lindsey and other victims of Foley's sexual abuse.

///
///
///
///
///

# EIGHT CAUSE OF ACTION

California Civil Code § 51.9 – Sexual Harassment
(*Plaintiff Lindsey Nikola Against Defendant Peter Foley*)

218.   Plaintiff Lindsey re-alleges and incorporates by reference herein the allegations contained herein above in paragraphs 1–129, as though fully set forth and brought in this cause of action.

219.   Lindsey, who was an employee of the USSS, which is directly associated with the Team, was in a business, service, or professional relationship with Foley, who coached the Team, had power over the athletic and operation sides of the USSS, was a powerful figure and source of access to opportunities across the snowboarding industry, and purported to be able to help Lindsey and others in their careers centered around snowboarding.

220.   Foley made sexual advances, solicitations, sexual requests, demands for sexual compliance by Lindsey, as well as engaged in other verbal, visual, or physical conduct of a sexual nature or of a hostile nature based on Lindsey's gender, all of which were unwelcome and pervasive or severe.

221.   Foley intentionally, recklessly, and wantonly did acts which resulted in harmful and offensive contact with the intimate parts of Lindsey's person.

222.   Foley used his authority, the trust inherent in his and Lindsey's respective positions, and their unequal power dynamic to coerce and exploit Lindsey physically, psychologically, and/or emotionally through force, manipulation, emotional abuse, intimidation, and retaliation.   These acts were done for Foley's sexual gratification.

223.   Because of Foley's uniquely powerful role in the snowboarding industry and within the USSS, Lindsey could not easily end her professional relationship with Foley.

224.   Foley's conduct was so egregious as to fundamentally and permanently alter the condition of the professional relationship between Lindsey and Foley.

225.   Lindsey has suffered economic loss or disadvantage and/or personal injury, including but not limited to, emotional distress as a result of Foley's conduct.

226.   As a result of Foley's unlawful conduct, Lindsey is entitled to actual damages and exemplary damages pursuant to California Civil Code section 52, subdivision (b), in an amount to be awarded at trial.

### **NINTH CAUSE OF ACTION**

Negligent Supervision and Retention

(*Plaintiff Lindsey Nikola Against Defendants USSS and Gale "Tiger" Shaw*)

227.   Plaintiff Lindsey re-alleges and incorporates by reference herein the allegations contained herein above in paragraphs 1–129, as though fully set forth and brought in this cause of action.

228.   At all times material, Foley was employed by the USSS.  Shaw served as an executive of the USSS from 2013 to 2022.

229.   Foley was unfit or incompetent to work directly with Lindsey and posed a particular risk of sexually harassing, assaulting, and or mentally abusing her.

230.   The USSS and Shaw knew or should have known not only that Foley was unfit or incompetent to work directly with women and posed a particular risk of sexually harassing, assaulting, and or mentally abusing her, but also that this unfitness created a particular risk to Lindsey.

231.   Foley's unfitness and particular risk to women in the snowboarding industry harmed Lindsey.

232.   The USSS and Shaw knew or should have known that Foley had previously engaged and was continuing to engage in unlawful sexual conduct with

athletes and employees, and had committed felonies, for his own personal sexual gratification.

233.   The USSS and Shaw knew or should have known that it was foreseeable that Foley was engaging, or would engage in illicit sexual activities with Lindsey and others under the cloak of the authority, confidence, and trust, bestowed upon him through the USSS and Shaw.

234.   At no time during the alleged period did the USSS or Shaw have in place a reasonable system or procedure to investigate, supervise and monitor the Team's coaches or staff, including Foley, to prevent sexual and verbal abuse, pre-sexual grooming, sexual harassment, or the molestation of children and young adults, nor did they implement a system or procedure to oversee or monitor conduct towards athletes or employees in their care.

235.   Even though the USSS and Shaw knew or should have known of these sexually illicit activities by Foley, they failed to use reasonable care in supervising Foley and did nothing to reasonably investigate, supervise or monitor Foley to ensure the safety of the employees and athletes in their care.

236.   The USSS and Shaw's negligence in supervising and or retaining Foley was a substantial factor in causing harm to Lindsey.

237.   As a result of the above-described conduct, Lindsey has expended significant costs on therapy and suffered damages including deprivation of income and benefits, loss of employment opportunities, severe physical and emotional distress, pain and suffering, mental anguish, humiliation, loss of enjoyment of life, and damage to her reputation and career.

238.   Lindsey claims compensatory and punitive damages herein.

239.   The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

**TENTH CAUSE OF ACTION**

Violation of 18 U.S.C. §§ 1594(c),  1595(a) – Conspiracy to Sex Trafficking

(*Plaintiff Lindsey Nikola Against All Defendants*)

240.   Plaintiff Lindsey re-alleges and incorporates by reference herein the allegations contained herein above in paragraphs 1–129, as though fully set forth and brought in this cause of action.

241.   Defendants conspired and acted in concert with one another to commit unlawful acts under 18 U.S.C. § 1591 against Lindsey and others, in violation of 18 U.S.C. § 1594(c).  Each Defendant shared the same conspiratorial objective, which was to: (1) benefit from the abuse Foley inflicted on Lindsey using force and coercion to make Lindsey engage in sex acts for commercial gain and advantage; (2) prevent (or attempt to prevent) the reporting, prosecution, or disclosure of Foley's sexual abuse, sexual assault, mental abuse, and exploitive or retaliatory behavior; and (3) cover up Foley's sexual abuse, sexual assault, mental abuse, and exploitive or retaliatory behavior.

242.   Defendants' conspiratorial scheme was carried out by the commission of the wrongful and overt acts set forth above, including, but not limited to: (1) recruiting and grooming female employees and athletes for Foley; (2) knowingly recruiting and enticing Lindsey to engage in sexual acts with Foley based on coercion, fear, and the false hope that doing so and remaining quiet about it would aid her professional career; and (3) knowingly benefiting from the abuse Foley inflicted on Lindsey using force and coercion to make Lindsey engage in sex acts for commercial gain and advantage.

243.   Defendants' participation in the furtherance of Foley's illegal sex abuse and sex trafficking plan and/or purpose was intentional and/or willful and, therefore, Defendants intentionally and/or willfully caused Lindsey's commission of sex acts in Defendants' affirmative acts supporting Foley.

244.   Defendants knew that their acts and conduct supporting and facilitating Foley would lead to commercial sex acts by Lindsey.

245.   Defendants through their affirmative acts provided substantial support to Foley forcing and/or coercing Lindsey to engage in commercial sex acts.

246.   At all relevant times, Defendants' conduct was willful and done with legal malice and knowledge that it was wrongful.

247.   Defendants' conduct has caused Lindsey serious harm, including, without limitation, physical, psychological, financial, and reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm.

## ELEVENTH CAUSE OF ACTION

Intentional Infliction of Emotional Distress

(*Plaintiff Lindsey Nikola Against Defendant Peter Foley*)

248.   Plaintiff Lindsey re-alleges and incorporates by reference herein the allegations contained herein above in paragraphs 1–129, as though fully set forth and brought in this cause of action.

249.   Foley's conduct was extreme and outrageous and intentionally caused severe emotional distress to Lindsey.

250.   Foley's conduct exceeded all possible bounds of decency.

251.   Foley acted with the intent and knowledge that Lindsey suffered emotional distress due to his coercive conduct.

252.   Foley's conduct caused Lindsey to suffer physical injury, severe mental and emotional distress, pain and suffering, mental anguish, and loss of enjoyment of life.

253.   Foley's unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Lindsey's rights.

254.   Lindsey claims compensatory and punitive damages herein.

255.   The amount of damages sought herein exceeds the jurisdictional limits of all other courts which would otherwise have jurisdiction.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff Lindsey Nikola respectfully requests judgment against Defendants, awarding compensatory, consequential, exemplary, punitive, and treble damages in an amount to be determined at trial; costs of suit; attorneys' fees; and such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff Lindsey Nikola demands a trial by jury on all issues so triable.

Dated: February 2, 2023                        Respectfully submitted,

**BOIES SCHILLER FLEXNER LLP**

By:  */s/ Alison L. Anderson*

Alison L. Anderson
*alanderson@bsfllp.com*
California Bar No. 275334
725 S Figueroa St, 31st Floor
Los Angeles, CA 90017
Telephone: (213) 995-5720
Facsimile:  (213) 629-9022

Sigrid S. McCawley*
*smccawley@bsfllp.com*
Florida Bar No. 129305
Alisha Moriceau *
*amoriceau@bsfllp.com*
Florida Bar No. 1011395
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, FL  33301
Telephone: (954) 356-0011
Facsimile:  (954) 356-0022

-45-

COMPLAINT

Kenya K. Davis*
kdavis@bsfllp.com
Washington DC Bar No. 502305
1401 New York Ave., NW
Washington, DC  20005
Telephone:  (202) 237-2727
Facsimile:   (202) 237-6131

Erica N. Sweeting*
esweeting@bsfllp.com
New York Bar No. 5517768
55 Hudson Yards, 20th Floor
New York, NY  10001
Telephone: (212) 446-2300
Facsimile:  (212) 446-2350

*Application to appear *pro hac vice* forthcoming

*Attorneys for Plaintiff*