1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDSEY NIKOLA,<br><br>      Plaintiff,<br><br>  v.<br><br>PETER FOLEY and UNITED STATES SKI AND SNOWBOARD,<br><br>      Defendants. | Case No. 2:23-cv-00811-SPG-JPR<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS [ECF NOS. 74, 76]** |

   Before the Court are two motions to dismiss ("Motions"), filed by Defendants Peter Foley and United States Ski and Snowboard, respectively.  (ECF Nos. 74, 76).  Having considered the parties' submissions, oral arguments, the relevant law, and the record in this case, the Court GRANTS Defendants' Motions.

## I.   BACKGROUND

### A.   Procedural Background

Plaintiff filed her original complaint in this action on February 2, 2023.  (ECF No. 1).  On May 15, 2023, Plaintiffs filed the operative First Amended Complaint.  (ECF No. 48 ("FAC")).  On June 30, 2023, Defendant Peter Foley ("Foley) and Defendant United States Ski and Snowboard ("USSS") filed individual motions to dismiss.  (ECF No. 74 ("Foley MTD")); (ECF No. 76 ("USSS MTD")).  Defendant Foley also filed a Notice of Joinder in USSS's MTD.  (ECF No. 75).  Plaintiffs opposed each of the Motions, and Defendants replied.  (ECF No. 83 ("Opp. to USSS MTD")); (ECF No. 84 ("Opp. to Foley MTD")); (ECF No. 86 ("USSS Reply")); (ECF No. 88 ("Foley Reply")).

### B.   Factual Background

The following allegations are taken from Plaintiff's FAC:

Plaintiff Nikola was an employee of the communications team in USSS's marketing department.  (FAC ¶ 55).  She managed press and public relations in that role, and engaged in communications coverage for the USSS Team ("the Team").  (*Id.*).  In this role, she traveled to domestic competitions alongside the Team to manage press and public relations, among other tasks.  (*Id.* ¶ 58).  On these trips, she would stay in housing with athletes and coaches and witnessed male coaches sharing rooms and beds with female athletes because of the USSS' budget constraints.  (*Id.*).

Also, on the domestic competition trips, Plaintiff alleges she was coerced, sexually harassed, and sexually assaulted by Foley.  (*Id.* ¶ 61).  For instance, in December 2008 at a World Cup ski race in Beaver Creek, Colorado, Plaintiff agreed to allow Foley to stay in her room on a cot because he was not coaching at the race and therefore did not have separate accommodation.  (*Id.* ¶ 62).  She did this in exchange for Foley allowing her to stay in the Team's accommodation at a different competition.  (*Id.*).  Plaintiff alleges she needed to attend competitions to advance her career.  (*Id.* ¶ 63).  However, in December 2008, at the Colorado competition, while sharing her room with Foley, Plaintiff alleges Foley pressured her to pose nude for him for photos.  (*Id.* ¶¶ 64–66).  According to Plaintiff,

She felt intimidated because she knew Foley had the power to destroy her career.  (*Id.* ¶ 68).

At the same competition in Beaver Creek, Plaintiff alleges Foley went on to physically assault her.  (*Id.* ¶ 69).  Specifically, after attending a group dinner with Team members and employees, Plaintiff alleges that Foley crawled into bed with her and assaulted her, despite her repeated statements of "no" and "stop!"  (*Id.* ¶¶ 69–71).  Foley apologized to Plaintiff the following day, but then subsequently verbally harassed her at a different race competition.  (*Id.* ¶¶ 73–76).

When Foley later visited the Ski Team offices in Park City where Plaintiff worked, Plaintiff spoke up and told Foley that what he had done was wrong.  (*Id.* ¶ 77).  However, shortly after the confrontation, Plaintiff was informed that she would not be allowed to go to the Olympics as the USSS Press Officer despite her hard work towards that goal.  (*Id.* ¶ 77).  Instead, Plaintiff was informed that a male co-worker, who was not a member of the USSS communications team, would serve as the Press Officer at the Olympics.  (*Id.*).  Plaintiff alleges that this decision was in retaliation for confronting Foley and refusing to comply with his sexual demands.  (*Id.* ¶ 78).  Plaintiff alleges that her anxiety and fear of Foley led her to leave the USSS organization altogether.  (*Id.* ¶ 80).  However, in March 2022, she came forward and reported the assault.  (*Id.* ¶ 81).

## II.   LEGAL STANDARD

### A.   Motion to Dismiss Under Rule 12(b)(2)

Defendants may move to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate."  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d. 797, 800 (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)).  In determining whether jurisdiction is appropriate, the court is permitted to consider evidence introduced by declaration or affidavit and it may order jurisdictional discovery, if necessary.  *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001) (citing *Data Disc, Inc. v. Sys. Tech.*

*Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977)).  If the motion to dismiss for lack of personal jurisdiction is not based upon an evidentiary hearing and is based solely upon written materials, a plaintiff need only make a prima facie showing of facts supporting jurisdiction to survive the motion.  *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (citing *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010)).  A plaintiff cannot "simply rest on the bare allegations of its complaint," but uncontroverted allegations in the complaint must be taken as true by the court.  *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011) (citation omitted).  Finally, genuine "[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor."  *Schwarzenegger*, 374 F.3d at 800 (citations omitted).

## III.   DISCUSSION

Defendants USSS and Foley challenge both this Court's personal jurisdiction and the adequacy of Plaintiffs' allegations as to each of the claims in the FAC.  Because the Court finds that the allegations of the FAC do not demonstrate that this Court has personal jurisdiction over Defendants, as currently alleged, it does not reach the arguments on the merits of Plaintiffs' claims.

### A.   Personal Jurisdiction

Where there is no applicable federal statute governing personal jurisdiction, district courts apply the law of the state in which they sit.  *See* Fed. R. Civ. P 4(k)(1)(A).  California's long-arm jurisdictional statute is coextensive with federal due process requirements, therefore, the jurisdictional analyses under state law and federal due process are the same.  *See Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998).  "For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'"  *Schwarzenegger*, 374 F.3d at 801 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  Minimum contacts may be established via general jurisdiction or specific

jurisdiction.  General jurisdiction exists where the defendant's contacts with the forum state "are so 'continuous and systematic' as to render [it] essentially at home in the forum state." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co.*, 326 U.S. at 317)).  Specific jurisdiction exists when the plaintiff's claims or causes of action "arise out of or relate to" the defendant's contacts with the forum state. *See Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 472 (1985) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

Here Plaintiff argues that Foley and USSS are properly subject to both general and specific personal jurisdiction in California.  Defendants dispute that they are subject to personal jurisdiction at all.  The Court therefore will analyze each basis.

**B.     General Personal Jurisdiction**

Courts have general jurisdiction over a defendant only when the defendant's contacts with the forum state are "so continuous and systematic as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (alteration original). Claims based on general jurisdiction "need not relate to the forum State or to the defendant's activity there; they may concern events and conduct anywhere in the world. *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021). However, given the breadth of this jurisdiction, "only a select 'set of affiliations with a forum' will expose a defendant to such sweeping jurisdiction." *Id.*  (citing *Daimler AG*, 571 U.S. at 137).  For instance, individuals are subject to general jurisdiction in their place of domicile. *Id.*  Meanwhile, corporations are subject to general jurisdiction in their place of incorporation and their principal place of business. *Id.*

Plaintiff here argues that Defendants Foley and USSS are both properly subject to general jurisdiction in California.  However, as Plaintiff's FAC makes clear on its face, Defendant Foley is domiciled in Oregon.  (Compl. ¶ 14).  Defendant USSS has both its principal place of business and its headquarters in Park City, Utah.  (*Id.* ¶ 16).  Plaintiff does not allege, nor does she argue, that either Defendant fits the typical basis for general jurisdiction.  Instead, pointing to cases that predate *Daimler* and the Supreme Court's

limitation of general jurisdiction in that case, Plaintiff argues that Defendants have such systematic and continuous connections to California that they may be properly subjected to general jurisdiction.  The Court disagrees.  In *Daimler*, the Supreme Court made clear that general jurisdiction may not be based solely on a corporation's engagement in "a substantial, continuous, and systematic course of business in a forum." *Daimler*, 571 U.S. at 137–38.  Instead, the Court found that such a "formulation" would be "unacceptably grasping." *Id.* at 138.  While the Court did not "foreclose the possibility that in an exceptional case . . . a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State," the instant case does not rise to such a level. *Id.* at 139 n. 19.  Indeed, in making this decision, the Supreme Court cited to its prior case, *Perkins v. Benguet Consol. Mining Co.*, as an example of the exceptional case that would justify the exercise of general jurisdiction over a corporation in a forum where it was not incorporated and did not maintain its principal place of business. *Id.* at 129.  However, the facts of *Perkins* are indeed rare.  In *Perkins*, the plaintiff sued a mining company that was incorporated in and had its principal place of business in the Philippines. *Perkins v. Benguet Colsol. Mining Co.*, 342 U.S. 437, 438–39 (1952).  However, during the Japanese occupation of the Philippines, the company's president, who was also the principal stockholder and general manager of the company, relocated to Ohio, where he maintained an office, conducted much of the company's business, and stored company files. (*Id.* at 447–48).  The Court recognized that in this unique circumstance, while the president of the company essentially ran the company out of Ohio, the activities were so "continuous and systematic" as to justify exercising general jurisdiction in that state. *Id.* at 448–49.  In essence, the defendant company had its principal place of business temporarily relocated.

In contrast, here, there are no such exceptional allegations.  Plaintiff alleges that Defendant Foley regularly visited California with USSS.  (FAC ¶¶ 14–17).  Similarly, Plaintiff alleges that USSS routinely sends athletes to its California training location at

Mammoth Mountain, recruits heavily from California, and deploys personnel to California in relation to training sessions and competitions in the state. (FAC ¶¶ 17–19). None of these allegations present an exceptional case, like that in *Perkins*, that would transform an out-of-state corporation or individual's contacts with the forum such that they can be considered "at home." Therefore, the Court does not possess general personal jurisdiction over Defendants and must determine whether it may properly exercise specific personal jurisdiction.

## C.   Specific Personal Jurisdiction

A three-prong test applies for analyzing a claim of specific personal jurisdiction: "(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Schwarzenegger*, 374 F.3d at 802. The plaintiff bears the burden of proving the first two prongs of the test. *Id.* If the plaintiff fails to demonstrate either, the forum state does not have personal jurisdiction. *Id.* However, if the plaintiff succeeds in demonstrating both prongs, the burden shifts to the defendant to demonstrate that the exercise of jurisdiction would not be reasonable. *Burger King*, 471 U.S. at 476–78.

The first prong of this test asks courts to apply either a "purposeful availment" or "personal direction" standard. *Schwarzenegger*, 374 F.3d at 802. Historically, the purposeful availment standard has typically been applied in actions based on contract while the purposeful direction standard has typically been applied to actions sounding in tort. *Unocal*, 248 F.3d at 915. However, in a series of recent cases, the Ninth Circuit has repeatedly stated that these typical applications do not create a "hard-and fast-rule." *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1162 (9th Cir. 2023); *see also Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1088–89 (2023). Instead, the Ninth Circuit

1   has found that "the purposeful direction and availment tests simply frame [the] inquiry into
2   the defendant's purposefulness vis-à-vis the forum state, ensuring that defendants are not
3   haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts."
4   *Impossible Foods*, 80 F. 4th at 1089 (internal citations omitted).  Therefore, instead of
5   considering merely the nature of a plaintiff's claims when deciding which test applies,
6   "courts should comprehensively evaluate the extent of the defendant's contacts with the
7   forum state and those contacts' relationship to the plaintiff's claims—which may mean
8   looking at both purposeful availment and purposeful direction." *Davis*, 71 F.4th at 1162.

9          Here, Plaintiff's claims sound in tort.  Furthermore, the tort allegations involve
10  alleged conduct outside the forum, such that purposeful direction would typically apply.
11  *See Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 605 (9th Cir.
12  2018) (finding effects test under purposeful direction inquiry appropriate where allegations
13  are based on torts allegedly committed outside the forum).  However, as Plaintiff argues,
14  Defendants' other, non-tortious, contacts with California are not irrelevant and may be
15  examined under the purposeful availment prong to determine whether Plaintiff's overall
16  allegations satisfy the first prong of specific jurisdiction.

17                 1.    Purposeful Direction

18         Typically for claims sounding in tort, as Plaintiffs' claims of assault here do, courts
19  "apply a 'purposeful direction' test and look to evidence that the defendant has directed his
20  actions at the forum state, even if those actions took place elsewhere." *Picot v. Weston*,
21  780 F.3d 1206, 1212 (quoting *Schwarzenegger*, 374 F.3d at 802–03).  To find purposeful
22  direction, the defendant allegedly must have "(1) committed an intentional act, (2)
23  expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to
24  be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 803 (internal quotations and
25  citations omitted).  "Failing to sufficiently plead any one of these three elements is fatal to
26  Plaintiff's attempt to show personal jurisdiction." *Rupert v. Bond*, 68 F. Supp. 3d 1142,
27  1163 (N.D. Cal. 2014) (citing *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d
28  1124, 1128–29 (9th. Cir. 2010)).

Here, the allegations contained in the FAC do not support personal jurisdiction over Defendants based on purposeful direction alone because there is no allegation that Foley or USSS inflicted harm on Plaintiff that was directed at California. *See Davis*, 71 F.4th at 1163 ("Harm suffered in the forum state is a necessary element in establishing purposeful direction."). Plaintiff alleges that Foley sexually assaulted her in Colorado and that USSS covered up that assault. There are no allegations that Plaintiff resided in California at the time of the assault such that the harm of the assault would have foreseeably been suffered in California. Additionally, while Plaintiff alleges a larger culture of harassment, sharing of naked or partially nude photos of young female teammates, and other potentially tortious conduct, none of it is alleged to be expressly aimed at or related to California. Express aiming requires more than the idea that an injury to a plaintiff, however terrible, "would follow [her] wherever [s]he might choose to live or travel." *Picot*, 780 F.3d at 1215. Instead, it requires that the alleged tortious conduct be directed not only to a Plaintiff, who herself has ties to California, but at the forum itself through, for instance, occurring in the state, contacting a person in the state, or otherwise reaching out to the state. *Id.* Similarly, the allegations that USSS failed to protect their young female athletes and, indeed, allegedly furthered Foley's ability to continue to engage in inappropriate behavior, as currently stated, have no clear ties to California. There is no express allegation that any sexually inappropriate behavior took place in California or that Defendants knew that their actions would have impacts in California beyond the individual Plaintiff's potential travel there for her work in the communications and marketing wing of USSS.

Instead, Plaintiff makes a novel argument regarding the nature of the harm caused by sexual assault. Plaintiff asks the Court to find that, because of the invasiveness of the alleged assaults and the unique control Foley had over the USSS organization, the harm was directed at and foreseeably felt in California. Plaintiff points to USSS training and competition in California and the travel Plaintiff allegedly completed in California with Foley and the team to argue that the harm of the assault continued into California. While the Court recognizes the appeal of such an argument, particularly regarding female athletes,

but perhaps employees as well where one figure allegedly retains such unique control, the Court need not traverse that slippery slope today.  Instead, the Court looks to purposeful availment and the Ninth Circuit's more expansive understanding of the first prong of specific personal jurisdiction to determine whether it may appropriately reach the named Defendants.

2.  <u>Purposeful Availment</u>

A defendant may be deemed to have purposefully availed itself of a forum when its dealings with a state establish a "quid pro quo." *Schwarzenegger*, 374 F.3d at 802.  In other words, where a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws," in return it must "submit to the burdens of litigation in that forum." *Id.*  Purposeful availment may thus be found where the defendant "deliberately reache[s] out beyond its home – by for example, exploiting a market in the forum state or entering a contractual relationship centered there." *Yamashita v. LG Chem., Ltd.*, 62 F.4th 496, 503 (9th Cir. 2023).  To make this determination, courts look to a defendant's "entire course of dealing" with the forum state, rather than "solely the particular contract or tortious conduct giving rise to [a] claim." *Global Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1108 (9th Cir. 2020).

Here, Plaintiff alleges that each of the Defendants had varying levels of contacts with California.  First, Plaintiff alleges that Defendant Foley frequently traveled to California and regularly brought his athletes to the state for competitions and training at both Mammoth Mountain and Tahoe.  Second, Plaintiff alleges that USSS has an official training site at Mammoth Mountain Ski Area and that the team, including coaches, athletes, and personnel, attended training camps, media events, fundraisers, and competitions in California.  (FAC ¶¶ 16–19).  While Plaintiff has not specifically alleged that a contract existed between either of the Defendants and any entity in the forum, Plaintiff has alleged overall courses of dealing that demonstrate sufficient availment of the forum.  Plaintiff has alleged that USSS and Foley have, in different ways, reached beyond their home fora and

-10-

engaged in substantial enough activities within the state, to invoke the benefits and protections of its laws. *Schwarzenegger*, 374 F.3d at 802. Therefore, Defendants can also reasonably expect to submit to litigation within the forum, and their contacts are not so fortuitous or attenuated that an exercise of specific jurisdiction would violate due process. *See Impossible Foods*, 80 F.4th at 1090 (finding company's prior base in California sufficiently demonstrated purposeful availment even though at the time of the action, it had moved out of state). Therefore, because Plaintiff has adequately demonstrated the first prong of the analysis here, the Court turns to whether the alleged contacts arise out of or relate to the instant action.

### 3.   Arising Out of or Relating To

The second prong of the personal jurisdiction analysis asks the Court to consider "the extent of the defendant's contacts with the forum and the degree to which the plaintiff's suit is related to the contacts." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1210 (9th Cir. 2006) (en banc). For an injury to arise out of a defendant's forum contacts, "a direct nexus [must] exist[] between [a defendant's] contacts [with the forum state] and the cause of action." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 742 (9th Cir. 2013). However, the Supreme Court has also made clear that "arise out of" and "relate to" should be seen as alternatives, such that personal jurisdiction may exist "without a causal showing." *Ford*, 141 S. Ct. at 1026. This "does not mean that anything goes," such that "relate to" still "incorporates real limits, as it must to adequately protect defendants foreign to a forum." *Id.* The Ninth Circuit has interpreted these limits to mean that a plaintiff's injury sufficiently relates to a defendant's forum contacts if: (1) "similar injuries will tend to be caused by those contacts;" or (2) the "defendant should have foreseen the risk that its contacts might cause injuries like that of the plaintiff." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 505–506 (9th Cir. 2023). The Ninth Circuit has also found that "a stronger showing of purposeful contacts with the forum state will permit a lesser showing of relatedness to the litigation." *Impossible Foods*, 80 F.4th at 1091 (internal citations omitted). Meanwhile, "[a] single contact with the forum

state may be sufficient to support jurisdiction if the action arises out of that particular purposeful contact of the defendant with the forum state." *Id.* (internal citation omitted).

Here, a direct nexus under the arising out of test does not exist. As already previewed, Plaintiff's specific factual allegations of harm from assaults allegedly carried out by Foley and hidden by USSS do not "arise out of" Defendants' contacts with the state. The allegations in this action relate to a sexual assault and a cover up of that assault that all allegedly took place outside of California. The contacts Plaintiff has alleged that each Defendant possesses with the state – namely, travel to the state for work related to competitions, fundraising activities in the state, and using facilities in the state – do not have a direct nexus with the claims in this action. Therefore, the Court looks to the broader "related to" prong to determine whether it possesses personal jurisdiction over each of the Defendants.

Much of the precedent regarding the sufficiency of allegations that a defendant's contacts are "related to" claims in an action has been developed in the context of a stream of commerce analysis. *See Ford*, 141 S. Ct. at 1026 (involving Ford's advertising, marketing, and sale of the type of cars that caused the injury in the forum states). For example, in *Ford*, the Supreme Court held in a product liability case that Ford could be subject to specific personal jurisdiction in states where it did not make, sell, or design the particular model that was involved in the accident, because Ford had "systematically served a market" in those states through comprehensive auto sales, service, and marketing efforts. *See id.*, at 1028–29. The Ninth Circuit, in the wake of *Ford*, applied the "related to" prong to another stream of commerce case. *Yamashita*, 62 F.4th at 505. The *Yamashita* Court looked to Ford for theories of what might satisfy the "related to" prong, and found that "relatedness proxies for causation, ensuring jurisdiction over a class of cases for which causation seems particularly likely but is not always easy to prove." *Id*. On this basis, the Court found that "a plaintiff's injury relates to a defendant's forum contacts if similar injuries will tend to be caused by those contacts." *Id.* The Ninth Circuit in *Yamashita* also reasoned that, just as Ford's "extensive marketing" of the car models involved in that suit

1  led to sufficient relatedness, a plaintiff's injury more generally "relates to a defendant's
2  forum contacts if the defendant should have foreseen the risk that its contacts might cause
3  injuries like that of the plaintiff." *Id.* at 506.

4          Then, in *Impossible Foods*, the Ninth Circuit applied the "related to" test outside of
5  the stream of commerce context. *Impossible Foods Inc.*, 80 F.4th at 1079.  The *Impossible
6  Foods* Court found that a declaratory judgment action for trademark non-infringement was
7  sufficiently "related to" the challenging defendant's contacts with the forum because the
8  defendant had previously been headquartered in the state and had conducted most of its
9  trademark building activities in the forum. *Id.*  Therefore, the heart of the dispute, the legal
10 rights over the trademark, were closely tied to the forum. *Id.* at 1097.  Most recently, the
11 Ninth Circuit found that a consumer's claims of harm due to a shopping website's
12 extraction and processing of his personal information was not sufficiently related to the
13 website's contacts in the forum, including brick and mortar operations and contracts with
14 merchants in the state. *Briskin v. Shopify, Inc.*, 87 F.4th 404, 414–415 (9th Cir. Nov. 28,
15 2023).  The Court found that the plaintiff "would have suffered the same injury regardless
16 of whether he purchased items from a California merchant or was physically present in
17 California when he did so."  *Id.*  It also rejected the idea that the shopping company's
18 "broader business actions in California set the wheels in motion for" the privacy-related
19 harm alleged. (*Id.*).

20         With this guidance in mind, Plaintiff's claims here are not sufficiently "related to"
21 Defendants' contacts with the forum.  While Plaintiff alleges that Foley and USSS made
22 frequent trips with athletes to the forum for competitions and trainings, there are no
23 allegations that Plaintiff previously traveled to California with the team, that she intended
24 to in the future, or that any of the assaults took place in the forum.  Therefore, based on the
25 allegations, like the plaintiff in *Briskin*, Plaintiff here would have suffered the same injury
26 regardless of whether Foley and USSS generally encouraged travel to California for meets
27 and competitions.  The larger conduct alleged of a culture of sexually explicit language,
28 underage drinking, and sharing rooms between young athletes and adult male coaches,

while troubling, does not create a sufficient relation as currently alleged.  This culture did not make it "foreseeable" that assaults, like that on Plaintiff, might occur in California. Indeed, to make such a finding would be to reach personal jurisdiction beyond the bounds set forth by the Supreme Court in *Ford*, when it cautioned that "relates to" "does not mean anything goes." *Ford*, 141 S. Ct. at 1026.

Overall then, because the Court finds that Plaintiff has not adequately alleged that her claims arise out of or relate to Defendants' contacts with the forum, the Court does not reach the reasonableness of any exercise of jurisdiction over Defendants.

### D.   Leave to Amend and Jurisdictional Discovery

Defendants ask the Court to dismiss with prejudice, arguing that any amendment would be futile.  Plaintiff meanwhile argues that, if the Court finds that she has not adequately alleged personal jurisdiction, she should be allowed to engage in limited jurisdictional discovery.  The Court addresses each argument in turn.

First, leave to amend in the Ninth Circuit is to be "freely given." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (internal citation omitted).  While courts have greater discretion to deny leave to amend where a plaintiff has already amended their complaint, prior amendment alone is not sufficient grounds to deny leave.  Here, Plaintiff has only made one attempt to amend her pleadings, and the Court does not find that amendment would be futile.  Therefore, the Court grants leave to amend.

As to jurisdictional discovery, however, the Court is not persuaded that it would be appropriate here.  "Discovery is available in federal court to establish the presence of personal jurisdiction in that court." *Gibson v. Chrysler Corp.*, 261 F.3d 927, 948 (9th Cir. 2001) (internal citations omitted).  Jurisdictional discovery is particularly appropriate when "pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (quoting *Data Disc, Inc.*, 557 F. 2d at 1285 n.1).  On the other hand, "where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit

even limited discovery . . . ."  *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006) (quoting *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995)).

Here, at oral argument, Plaintiff argued for jurisdictional discovery to demonstrate the extent of Defendants' contacts with the forum through, for instance, evidence of fundraising efforts and recruitment in California. However, this evidence would appear to support the purposeful availment and purposeful direction prong of the analysis, which the Court has already found satisfied. It is not clear, based on Plaintiff's arguments, what additional information would be found through jurisdictional discovery that would bolster the relation of the claims asserted to the contacts already described. Therefore, the Court denies Plaintiff's request for jurisdictional discovery.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS each Defendant's Motion to Dismiss. Plaintiff shall file an amended complaint, if any, within twenty-one (21) days of the issuance of this order.

DATED:  December 26, 2023

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE